**William C. SHEA, Appellant,**

v.

**DONOHOE CONSTRUCTION CO., INC.**

No. 85–5931.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 22, 1986.

Decided July 18, 1986.

Karl N. Marshall, Washington, D.C., for appellant.

D'Ana E. Johnson, with whom James C. Gregg, Washington, D.C., was on brief, for appellee.

Before WALD and BUCKLEY, Circuit Judges, and EDWARD D. RE,[*] Chief Judge, United States Court of International Trade.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

William C. Shea appeals from the District Court's order denying his Rule 60(b) motion to reinstate his cause of action which the District Court had earlier dismissed because Shea's attorneys had failed to attend three separate status calls within a three week period. On the record before us it appears that any neglect in this case is attributable only to Shea's Boston counsel and the three local counsel that the Boston counsel successively employed; that there is no reason to believe that Shea was aware of the neglect; that the defendant was not so prejudiced by the attorneys' absences that dismissal was the only available alternative; and that the prejudice to the court system and the need to deter future misconduct could have been dealt with through measures less drastic than outright dismissal. Under these circumstances, we hold that the District Court abused its discretion in refusing to reinstate Shea's cause of action, without having first explored less drastic sanctions such as imposing costs or taking other appropriate action against the attorneys at fault.

## I. BACKGROUND

On September 13, 1981, while working as a glazier at a construction site in Washington, D.C., William Shea, a resident of Boston, Massachusetts, was struck on the side of his head with a plank being carried by an employee of Donohoe Construction Co., Inc. ("Donohoe"). As a result of the blow, Shea fell 10 to 15 feet through an escalator opening, landed on a solid steel plate below, and then continued to roll down the steel ribs of the escalator for another 25 feet. Shea suffered permanent injury to his neck, shoulder, and lower back.[1]

In order to bring a tort action against Donohoe, Shea's Boston attorney, Vincent A. Murray, Jr., contacted a local Washington, D.C. attorney, Paul Maloof. On September 13, 1984, the last day to file suit under the applicable statute of limitations, Maloof filed a tort action in the United States District Court for the District of Columbia. Over the next six months, discovery proceeded without controversy.

On March 29, 1985, Shea, together with his attorney, Murray, travelled to Washington, D.C., so that Shea could be deposed by defendant at its counsel's office. At the close of the deposition, both counsel agreed to seek an extension of the March 31, 1985, discovery cutoff date that the court had set out in its Scheduling Order. *See* Affidavit of Vincent A. Murray, Jr., Esq., Joint Appendix ("J.A.") at 2–3.[2]

Because local counsel Maloof was frequently in Brazil, where he maintained an office, Murray set out to secure the services of a different local counsel. *Id.* at 3. While in Washington on March 29 for the Shea deposition, Murray met with attorney Eric May, with whom he had previously discussed representing Shea. Murray requested May to appear at a scheduled April 12 status call in order to request the discovery extension. One or two days before the status call, however, May telephoned Murray and told him that he could not take

---

[*] Sitting by designation pursuant to Title 28 U.S.C. § 293(a).

1. In a workmen's compensation claim against his own employer, Shea was awarded compensation for his temporary total disability and permanent partial disability.

2. The affidavit submitted by attorney Murray to the District Court was uncontroverted. Moreover, appellee has accepted appellant's Statement of Facts for purposes of this appeal. Appellee's Brief at 2.

the case and accordingly would not be in attendance at the status call. *Id.* On April 11, Murray explained his predicament to defendant's counsel and asked defendant's counsel to indicate to the District Court what had transpired and to request the discovery extension that had been jointly agreed upon. Defendant's counsel agreed to communicate these requests to the court. *Id.*

There is no transcript of the April 12 status call, and it is thus unclear whether or not defendant's counsel explained to the court why plaintiff's counsel was absent or that they had jointly agreed to an extension. It is clear, however, that the District Court scheduled a new status call for April 24. The District Court sent notice of the new status call to local counsel Maloof, who was still counsel of record. The evidence reveals, however, that Maloof's office had a practice of sending the items received from the District Court to Maloof in Brazil. Maloof would then forward them to Murray in Boston. Because of this delay, Murray never learned of the second status call, and thus no one represented plaintiff at it.

The District Court, of course, had no knowledge of these circumstances and was justifiably concerned when plaintiff's counsel failed to attend yet a second status call. Thus, on April 25, 1985, the District Court scheduled another status call for May 3, 1985, at 9:00 a.m., and instructed the plaintiff's counsel to be "prepared to show cause why this case should not be dismissed for failure to appear at previous status conferences and for failure to prosecute this case." Order, Civil Action No. 84–2865, slip op. at 2 (D.D.C. April 25, 1985). Significantly, this order was sent to both Murray and Maloof.

On May 1, 1985, the day after he received the order regarding the May 3 status call, Murray obtained local counsel who agreed to take the case and attend future status calls. During the next two days, Murray spoke with the new local counsel, Phyllis Outlaw, on approximately four separate occasions in order to brief her and to ensure her attendance at the status call. J.A. at 4. On the day before the status call, Murray telephoned the District Judge's courtroom clerk to inquire whether his personal attendance was necessary at the status call. After being informed that the appearance of local counsel Outlaw would suffice, Murray cancelled airplane reservations that he had made to be in attendance at the status call. *Id.* Finally, Murray called Outlaw at 10:00 on the evening prior to the status call to review the facts once again and to remind her of the importance of her attending the status call the next morning. *Id.* at 5.

On the day of the status call, Murray received a message in his office from Outlaw that she had arrived approximately 20 minutes late for the status call and that the District Court had moved on to the next matter. Murray called the District Court to communicate his concern over the happenings of the morning, but was informed that an order had been issued dismissing the case. In that order, the District Court found

> that an order of dismissal is a necessary and appropriate sanction in the present case, not only because of plaintiff's blatant disregard of this Court's orders, ... but as a general deterrent to future neglect of pending litigation.... It is unfortunate that a potentially meritorious claim may fail because of the inattention of counsel but, in this as in many other contexts, a client chooses an attorney at his own peril.

Order, Civil Action No. 84–2865, slip op. at 2 (D.D.C. May 3, 1985). The court concluded that the "record of multiple acts of noncompliance coupled with the disregard of the show cause order cannot be deemed a mere oversight." *Id.* at 3.

Subsequent to the order, Murray finally succeeded in securing a local counsel who would diligently represent Mr. Shea. The new counsel filed a Rule 60(b) motion with the District Court, explaining all of the circumstances set out above, attaching an affidavit from Murray and correspondence from Maloof, and asking for reinstatement

of the cause of action. The District Court denied plaintiff's motion, finding that *the only excuse offered was "the negligence or untimeliness of one or more counsel."* Memorandum Opinion and Order, Civil Action No. 84–2865, slip op. at 3 (D.D.C. Aug. 2, 1985) (emphasis added).[3] Shea now appeals the District Court's refusal to reinstate his action.

## II. DISCUSSION

For many years this circuit has struggled with the appropriate judicial response to attorney misconduct or dereliction of duty. At different times and in different cases, we have discussed widely differing considerations. While our holdings may not be technically inconsistent, district courts have understandably found meaningful guidance lacking. Our decision today is designed to review and put into perspective some basic principles that have in the past governed and will in the future govern our review of dismissals based upon attorneys' misconduct or neglect.

Our past decisions reveal three basic justifications for dismissing an action because of counsel's misconduct. First, dismissal is necessary at times because the other party in the case has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case. Second, dismissal may be appropriate where resort to any less drastic sanctions would not mitigate the severe burden that the misconduct has placed on the judicial system. Finally, dismissal may, on certain occasions, serve as an ultimate sanction, aimed at punishing abuses of the system and deterring future misconduct. Because the factors to be addressed by the trial judge in considering the propriety of dismissal differ depending on which of these purposes is to be served, we will discuss them separately.

### A. *Prejudice to Defendant*

When the misconduct of one party's attorney prejudices the other party so severely as to make it unfair to require the other party to proceed with the case, dismissal of the case, or any portion thereof, has been held appropriate. For example, in *Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965 (D.C.Cir.1976), this court affirmed the District Court's dismissal of an action where the plaintiffs had failed to prosecute the case for nearly two years and "there was positive indication that the delay had operated prejudicially" to the defendants. *Id.* at 970. Specifically, the defendants had averred that "[m]any of the witnesses to the very complex transaction ... are no longer available." *Id.* at 967. By contrast, in reversing dismissals, we have often pointed to the absence of prejudice to the opposing party. *See, e.g., Jackson v. Beech*, 636 F.2d 831, 837 (D.C.Cir.1980) (reversing default judgment where defendant was blameless and "the delay of twenty-four days would not have injured the plaintiff in any way"); *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C.Cir. 1977) (cautioning that alternatives to dismissal should be explored where "opponent in the litigation has not been harmed"); *Bibeau v. Northeast Airlines, Inc.*, 429 F.2d 212, 213 (D.C.Cir.1970) (reversing dismissal where "appellee makes no factually supported claim of prejudice from the delay"); *Barber v. Turberville*, 218 F.2d 34, 36 (D.C.Cir.1954) (reversing default judgment where defendant was not at fault and "no intervening equities are alleged which would cause hardship in the event the default were vacated").

When dismissal is warranted because of actual prejudice to the other party, it has generally been considered irrelevant whether the delay is the fault of the counsel or his client. Even if the client is blameless, the trial court may decide that it is fairer to visit the sins of retained counsel upon the one who selected him, as opposed to the

---

**3.** As for Murray's contention that he never knew about the second status call, the court stated that he should have contacted the court or should have listed himself as lead counsel with the court. As for the third status call, the court had "no record or recollection of [Outlaw's] appearance on behalf of plaintiff, late or otherwise." Slip op. at 2–3.

other party in the case. In *Link v. Wabash Railroad,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Supreme Court rejected the argument that it is always improper to make a client pay for the derelictions of his attorney, explaining that "keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the *defendant." Id.* at 634 n. 10, 82 S.Ct. at 1390 n. 10 (emphasis in original).

Of course, outright dismissal even where the other party has been prejudiced may not be appropriate where less drastic action is available to cure the harm. "Since our system favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success" or would obviously prove futile. *Trakas v. Quality Brands, Inc.,* 759 F.2d 185, 186–87 (D.C.Cir.1985); *see also Jackson,* 569 F.2d at 123. Thus, the fact that the other party has incurred costs due to the malfeasance will not ordinarily be enough to warrant dismissal, since the court may order the guilty counsel to pay a designated amount to the other party to cover his costs and inconvenience. *See infra* at 1078–1079 & n. 6.

Where, however, the errant behavior has caused the other party severe prejudice in his ability to present his case, dismissal has been upheld. *See Cherry,* 548 F.2d at 970; Comment, *Involuntary Dismissal for Disobedience or Delay: The Plaintiff's Plight,* 34 U.Chi.L.Rev. 922, 934 (1967) [hereinafter cited as Comment, *The Plaintiff's Plight*]. Moreover, even without a showing of actual prejudice, we agree, as at least two of our sister circuits have held, that "[p]rejudice to defendants resulting from unreasonable delay may be presumed," and that there is no hard and fast requirement that the party aggrieved by such unreasonable delay always present specific evidence of the exact nature of the prejudice. *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982); *see also Citizens Utilities Co. v. American Telephone & Telegraph Co.,* 595 F.2d 1171,

1174 (9th Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979); *Moore v. Telfon Communications Corp.,* 589 F.2d 959, 967–68 (9th Cir.1978); cf. *Link,* 370 U.S. at 634 n. 10, 82 S.Ct. at 1390 n. 10. By contrast, where the delay is not as unreasonably protracted, "the need to show actual prejudice is proportionally greater." *Lyell Theatre Corp.,* 682 F.2d at 43; *Messenger v. United States,* 231 F.2d 328, 331 (2d Cir.1956).

■ In Shea's case, there has been no showing of actual prejudice to the defendant resulting from the relatively short period of weeks in which the no-shows occurred. Indeed, in its memorandum to the District Court and at oral argument before this court, defendant's counsel was commendably forthright in declining to claim that her client had been prejudiced by the delay in a manner that necessitates dismissal of the action. *See* Opposition to Plaintiff's Motion to Vacate the Order of Dismissal and Reinstate His Cause, at 4. Nor can we reasonably conclude that the three week period involved here was sufficiently protracted or unreasonable to give rise to a presumption of prejudice to the defendant. Thus, the dismissal here cannot be justified as a necessary means of negating prejudice to the defendant. The costs that the defendants incurred by appearing in court can be adequately compensated by requiring Shea's attorneys to pay those fees, or any other amount that the District Court determines to be just compensation for the inconvenience of attending the aborted status calls.

## B. *Prejudice to the Judicial System*

We have recognized in the past that attorney misconduct that does not give rise to actual prejudice to the other party, or even a presumption of prejudice, may still put an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay. Where the delay or misconduct would require the court to expend considerable judicial resources in the

future in addition to those it has already wasted, thereby inconveniencing many other innocent litigants in the presentation of *their* cases, our precedents have held that dismissal may be an appropriate exercise of discretion. As with the prejudice to the defendant inquiry, we have adopted various presumptions to guide our review here.

For example, where a party or counsel announces at the last minute that he cannot participate in a scheduled trial, the District Court is not required to disrupt its well-planned trial schedule to find a new date for the missed trial. Thus, district courts' decisions whether or not to grant a continuance are customarily accorded substantial deference. *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2352 at 141 (1971) ("[t]hough there are limits" on courts' discretion with regard to continuances, "they are not exacting"); *Trakas,* 759 F.2d at 189 (Scalia, J., dissenting).

Thus, in *Automated Datatron, Inc. v. Woodcock,* 659 F.2d 1168 (D.C.Cir.1981), this court affirmed the District Court's dismissal of part of a counterclaim where the defendant had, for more than six months, ignored a court order to join an indispensable party and affording him still more time would have necessitated a continuance in the trial date. Although there may be cases where continuances would in fact not wreak havoc with the court's docket, *see id.* at 1171 (MacKinnon, J., dissenting), we as an appellate court have not seen fit to inquire into the actual status of the trial court's docket and the precise level of disruption that rescheduling would create. We have opted instead for a relatively bright line test according district courts wide discretion in determining how detrimentally their schedules need be altered for delinquent counsel.[4]

Continuance of a trial date is not, of course, the only example of a situation where dismissal is frequently necessary to protect the "efficient administration of judicial affairs and provide [] meaningful access for other prospective litigants to overcrowded courts." *Lyell Theatre Corp.,* 682 F.2d at 42. A party's failure to comply with a rule or order of the court may not necessitate rescheduling of a trial but may nevertheless implicate "the public's interest in expeditious resolution of litigation [and] the court's need to manage its docket." *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir.1986). In *Henderson* the district court dismissed a suit with prejudice after plaintiff's counsel repeatedly failed to submit a pretrial order in accordance with a local rule. Although the reviewing court found no prejudice to the defendant, it affirmed the dismissal because "inordinate delay in the expeditious resolution of litigation, and prejudice to the court's need to manage its docket were being exacerbated by counsel's actions." *Id.* at 1425.

As in the case of dismissal based on prejudice to the defendant, a dismissal based on prejudice to the judicial system need not turn on the level of the client's— as opposed to the counsel's—complicity. But, even though we have not in some types of cases, such as continuances, tried to second-guess a trial court's determination that it would be overly burdensome on the system to take remedial action less drastic than outright dismissal, we caution that, as a general matter, it is still incumbent upon the trial court to consider such alternatives. When less drastic measures (such as sanctioning or replacing the errant attorney) would allow the court to proceed without placing an undue burden on its operation, they are preferable.

■ Although the repeated failure to attend status conferences in this case undoubtedly wasted the time of the District Court and opposing counsel, we do not think this case qualifies as one where the system suffered such a slight that a lesser sanction would not suffice. Proper action

---

**4.** Of course, even where continuances are involved, exceptional circumstances might require the District Court to deal compassionately with a litigant's unavoidable absence. *See Trakas,* 759 F.2d at 187 (plaintiff was unable to travel from St. Louis to Washington for the trial when "at the last minute [her] parents did not provide [a] loan").

against the attorney or attorneys at fault might well have brought them into compliance with the court's need to move the case ahead. The District Court might even have disqualified counsel from the case and ordered them to so inform Mr. Shea so he could select new counsel. This is not one of those situations, such as scheduling of a trial, where we will not closely review the District Court's determination. Although the line is obviously a close one, rescheduling status calls does not, as a general matter, present so difficult a problem of accommodation that it justifies a presumption which results in denying a blameless litigant his day in court. As we point out in the next section, the District Court may well have had reason to take action against one or more of the attorneys here to deter future neglect of status calls. But we do not believe a dismissal can be justified as necessary to the integrity of the court system under the facts of this case.

## C. *Deterrence and Punishment*

The third and most common rationale for dismissal in cases of attorney misconduct or delay has been the District Court's expressed need to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future. *See, e.g., Jackson,* 569 F.2d at 120–21; *Butler v. Pearson,* 636 F.2d 526, 528 (D.C.Cir.1980). Indeed, in this case, the District Court explained that "an order of dismissal is a necessary and appropriate sanction … not only because of plaintiff's blatant disregard of this court's orders … but as a general deterrent to future neglect of pending litigation." Order, Civil Action No. 84–2865, slip op. at 2 (D.D.C. May 3, 1985).

These goals are clearly legitimate ones. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (strict sanctions serve to "deter those who might be tempted to such conduct in the absence of such a deterrent"); *see generally* Note, *The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions,* 91 Harv.L.Rev. 1033, 1044–54 (1978). Nonetheless, unlike dismissals that are geared to remedying some prejudice, *see supra* at 7–12, they call for careful evaluation to ensure that the proper individuals are being sanctioned (or deterred) and that the sanctions or deterrent measures are not overly harsh.

Specifically, where attorney misconduct is involved, this court has been notably reluctant to affirm dismissal under the punishment or deterrence rationale unless the client himself is shown to deserve the sanction.[5] *See Beech,* 636 F.2d at 837 ("Default judgments were not designed as a means of disciplining the bar at the expense of the litigants' day in court."); *Jackson,* 569 F.2d at 123 ("Dismissals for misconduct attributable to lawyers and in no wise to their clients invariably penalize the innocent and may let the guilty off scot-free."); *Butler,* 636 F.2d at 531 ("concept of proportionality demands that plaintiffs not be unfairly penalized for negligence of their attorney"). When the client's only fault is his poor choice of counsel, dismissal of the action has been deemed a disproportionate sanction. Rather, we have frequently said, the District Court should first attempt to sanction the attorney at fault. *See Jackson,* 569 F.2d at 123 & n. 24 (discussing available sanctions); *Butler,* 636 F.2d at 531 ("Plaintiffs them-

---

5. Ours is not the only circuit to recognize the injustice of punishing a client when appropriate action against the attorney would serve the court's goals. *See, e.g., Carter v. City of Memphis, Tennessee,* 636 F.2d 159, 161 (6th Cir.1980); *Dove v. Codesco,* 569 F.2d 807, 810 (4th Cir. 1978); *Durham v. Florida East Coast Railway,* 385 F.2d 366, 368 (5th Cir.1967). *See generally* R. Rodes, K. Ripple & C. Mooney, *Sanctions Imposable for Violations of the Federal Rules of Civil Procedure* 70 (1981) ("Many courts are

reluctant to impose sanctions on an innocent client for the faults of the attorney. Recently, Federal courts have been more willing to … impose sanctions on attorneys for their own misconduct."); Comment, *The Plaintiff's Plight,* 34 U.Chi.L.Rev. at 931–32 (explaining that rule that client is bound by attorney's neglect is "often relaxed where a lawyer's neglect would otherwise preclude a party from receiving a trial on his claim or defense").

selves suggest that an award of reasonable attorney's fees would be a more appropriate sanction than dismissal. We agree."). As Judge Robinson explained in *Jackson*: "Public confidence in the legal system is not enhanced when one component punishes blameless litigants for the misdoings of another component of the system." *Jackson*, 569 F.2d at 123–24.

■ Our reluctance to penalize an innocent client only applies, of course, where the client is in fact innocent, *i.e.*, he is unaware of his attorney's dereliction and not negligent in his own right in not reasonably keeping in contact with the attorney in his case. When the client is aware, or should be aware, of his attorney's misconduct, it is not unjust to penalize him. Unfortunately, issues of when a reasonably diligent client should know about his attorney's negligence are difficult and time consuming to litigate. We recognize that clients typically, and in most cases justifiably, rely on their attorneys to proceed with their case without needing to be reminded of important filings and appearances. Therefore, in an effort to eliminate the guesswork in this area, and to promote fairness to clients without compromising the efficiency of the district court, we are adopting a rule of decision that we believe will afford the district courts more concrete guidance in the matter. We look disfavorably upon dismissals as sanctions for attorney misconduct or delay *unless the client himself has been made aware of the problem, usually through notice from the trial court.* We advise strongly that district courts themselves directly notify the *client* when attorney misconduct has occurred to a degree that the court is contemplating dismissal if a recurrence occurs. That communication should notify the client, in clear and unequivocal terms, that his case is in danger of dismissal due to his lawyer's dereliction; that the court will no longer tolerate the attorney's current course of conduct; and that the client is advised to be in touch with his lawyer to ensure future compliance with court orders, or to make arrangements for new counsel. If after this notification the attorney persists in the errant conduct, then the client shares in the responsibility for that conduct, and dismissal will generally be upheld. See Note, Inryco, Inc. v. Metropolitan Engineering Co.: *Inexcusable Neglect by Whom?*, 45 U.Pitt.L.Rev. 695, 716–17 (1984) (suggesting this type of approach and pointing out paradox of informing only the delinquent counsel); Comment, *The Plaintiff's Plight*, 34 U.Chi.L.Rev. at 929–37 (advocating dismissal conditioned on future compliance with the terms of an order which the client has been informed about).

This notice procedure is advised principally for cases where *dismissal* is contemplated for punitive or deterrent purposes. And, of course, the district courts would continue to have at their disposal the traditional variety of less severe penalties for dealing with attorneys who engage in misconduct. In *Jackson* we suggested a number of sanctions that might be appropriate in order to ensure compliance with court orders:

> The alternatives include an assessment to the delinquent lawyer of costs and counsel fees generated by the delinquency.... The court's disciplinary authority is available, and its contempt powers may also be.... Communication of the lawyer's action to the client or the bar association is another alternative.

*Jackson*, 569 F.2d at 123 n. 24.[6] The District Court has the authority to take these disciplinary actions under a variety of statutes and doctrines including its inherent power to protect the orderly administration of justice, *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980); its statutory contempt power, 18 U.S.C. § 401

---

**6.** The First Circuit has stated that "[s]uch sanctions include a warning, a formal reprimand, placing the case at the bottom of the calendar list, a fine, the imposition of costs or attorney fees, the temporary suspension of counsel from practice before the court, and dismissal of the suit unless new counsel is secured." *Zavala Santiago v. Gonzalez Rivera*, 553 F.2d 710, 712 n. 1 (1st Cir.1977).

(1982); local court rules, *see, e.g.,* Local Rules 4–3 (IV), 4–3(V)(e); and, under some circumstances, the federal cost statute, 28 U.S.C. § 1927. *See generally* R. Rodes, K. Ripple & C. Mooney, *Sanctions Imposable for Violations of the Federal Rules of Civil Procedure* 70–79 (1981). As a general matter, these alternatives are likely to prove not only more just to the innocent client, but also more effective as a deterrent since they penalize the wrongdoer directly. *See Comment, The Plaintiff's Plight,* 34 U.Chi.L.Rev. at 937 ("if costs were frequently assessed against derelict attorneys ... the deterrent effect would be increased").

In this case, there is no evidence whatsoever of client complicity, or even awareness that the status calls were being missed. For purposes of this appeal, we need not decide whether the unfortunate events that occurred were a result of one, two, three, or all of the four attorneys' gross ineptitude, or, rather, were caused by a series of unfortunate misunderstandings. Indeed, we assume as correct the District Court's determination that "the only 'justification' proffered for the repeated failure to appear ... is the negligence or untimeliness of one or more counsel." Memorandum Opinion and Order, Civil Action No. 84–2865, slip op. at 3 (D.D.C. Aug. 2, 1985). The fact remains that if anyone was derelict, it was not William Shea. There is nothing in the record to show any fault whatsoever on Shea's part—not even an extended course of delay that might have put him on notice that something was awry. Nothing indicates that Shea even knew what a status call was—much less that his attorney and the local counsels missed three of them. The memorandum in support of the Rule 60(b) motion for reinstatement stressed that the accompanying affidavits demonstrated that Shea was blameless. *See* Memorandum of Points and Authorities in

Support of Plaintiff's Motion to Vacate the Order of Dismissal and Reinstate His Cause of Action at 9. As our discussion makes clear, dismissal is inappropriate under these circumstances.[7] The District Court may, of course, take direct action against the derelict attorneys or notify the client that the case will be dismissed if there is any recurrent action.

### Conclusion

There are times when prejudice to another party or to the judicial system leaves no choice but to dismiss an innocent client's suit. That is not the case here, however. The District Court should have explored sanctions directly against the attorneys involved or directly informed the client of his attorney's dereliction prior to dismissing the case. We find none of the factors that were present in past cases and warranted dismissal of an innocent client's case to be present in this case. The District Court's order refusing to reinstate Shea's cause of action is, therefore,

*Reversed.*

---

7. Although, in conformance with Local Rule 211, the District Court dismissed the suit *without prejudice,* this was of no solace to Shea since the statute of limitations barred his bringing a new action. *See* J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.05[2], at 41–66–67

(1985). This factor, of course, counselled even further caution before dismissal of Shea's case. *See Burden v. Yates,* 644 F.2d 503, 505 (5th Cir.1981); *Moore v. St. Louis Music Supply Co.,* 539 F.2d 1191, 1194 (8th Cir.1976).