**Warren P. TUCKER, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 82–1087.**

United States District Court, District of Columbia.

Jan. 8, 1987.

**494**

Melvin A. Marshall, Washington, D.C., for plaintiff.

Ariel L. Mendez, Charlotte W. Parker, Asst. Corp. Counsel, Washington, D.C., for defendants D.C., Brennan, Penberg, Hairston, Elliot, Hickson, Dill, and Gonzalez.

Douglas J. Rykhus, Washington, D.C., for defendant Surgeon.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This case now is before the Court on defendants' second motions to dismiss for plaintiff's failure to comply with the Court's orders and for failure to prosecute. On consideration thereof, of plaintiff's opposition, and of the entire record herein, the Court grants the motions.

### Background

The factual details surrounding the incident which led to the filing of the complaint are not fully clear. Basically, this suit arises from a warrantless search of plaintiff's residence and his subsequent arrest for disorderly conduct. The Metropolitan Police Department received a tip that a dangerous fugitive was visiting plaintiff and that drugs were on the premises. Faced with exigent circumstances, officers went to the residence, knocked, and identified themselves. When no one answered, after a period of time the officers made a forcible entry. Three people were inside. Plaintiff was handcuffed. The other two occupants (a man and a woman) were told to lean against the wall. After a thorough search, which did not reveal the fugitive, the police seized an unregistered shotgun and an ammunition clip. They removed the handcuffs from plaintiff, and left. Plaintiff followed them out, and allegedly became abusive. Among other things, he was yelling police license tag numbers to others. He was arrested for disorderly conduct. He was taken to the Municipal Center, where he forfeited $10 collateral and was released.

The complaint, alleging "assault, battery, and violation of Fourth and Fifth Amendment rights," was filed on April 20, 1982.[1] Named as defendants were the District of Columbia and nine Metropolitan Police Department officers. The case's procedural history prior to its reassignment on December 6, 1983, to this judge was tortious and does not require recitation here. It previously had been referred to a United States Magistrate for certain purposes, but it later was recalled by the undersigned. Three dispositive motions were denied on April 18, 1985. At an April 30, 1985, status call, pretrial and trial dates were set (November 12 and 18, 1985, respectively). By Order dated June 11, 1985, the Court directed the future course of the case, including the filing of pretrial briefs. The Order was a standard one; it included in part advice to counsel that: "Failure to comply with any of those requirements may, in the Court's discretion, result in dismissal or default."

---

1. The case randomly was assigned when filed to Judge Gasch. When Thomas P. Jackson became a United States District Judge, the case was reassigned to him. When the undersigned later became a United States District Judge, the case was reassigned to him. The case now is the oldest on this Court's own civil docket. *See Link v. Wabash Railroad Co.,* 370 U.S. 626, 633 n. 9, 82 S.Ct. 1386, 1390 n. 9, 8 L.Ed.2d 734 (1962).

Plaintiff's counsel failed to comply with that Order. On October 31, 1985, defendants District of Columbia and eight of the nine MPD officer defendants filed a motion to dismiss the case for the failure to comply. The other officer defendant, William W. Surgeon, Jr., is represented by his own attorney; on November 6, 1985, a motion was filed on behalf of Officer Surgeon joining in the motion to dismiss which had been filed by the Corporation Counsel's Office.

In the meantime, plaintiff was serving a substantial sentence (for an offense involving PCP) at the Federal Correctional Institution at Ray Brook, New York. On November 4, 1985, plaintiff's counsel, recognizing his obligation to have plaintiff brought to the District of Columbia for the forthcoming trial, filed a [Petition for a] Writ of Habeas Corpus ad Testificandum. The writ was signed by the Court that day.

On November 8, 1985, plaintiff's counsel filed his opposition to the pending motions to dismiss. He also then filed a pretrial brief, which not only was untimely but which did not include proposed voir dire questions and proposed jury instructions, again in contravention of the directives contained in the Order of June 11, 1985.

The pretrial was conducted as scheduled on November 12, 1985. The Court followed its customary practice of holding the pretrial conference in the jury room, with no reporter present. It immediately became apparent that plaintiff could not be produced for the scheduled trial date of November 18. Counsel for the defendants renewed and expanded upon their pending written motions to dismiss. The circumstances fully warranted dismissal. However, the Court decided to permit plaintiff and his counsel one more opportunity, and orally denied the motions to dismiss. An Order confirming that ruling was issued on November 15, and the days (approximately five) which had been set aside for the trial were lost from the Court's crowded trial calendar.

The next status call was held on February 20, 1986. At it, pretrial was rescheduled for April 3 and trial for April 14, 1986. The standard Order setting forth dates and the obligations of counsel was issued on March 3, 1986.

By then, plaintiff's counsel was aware that a greater lead time was necessary to have the still-incarcerated plaintiff returned for trial. Accordingly, he filed a Petition for Writ of Habeas Corpus ad Testificandum on March 17, 1986. However, faced with the Speedy Trial Act and a lengthy criminal trial in April, it was necessary for the Court to vacate the latest pretrial and trial dates in this case.

Thereafter, new pretrial and trial dates were set (September 9 and September 16, 1986, respectively). A modified Order was issued on August 7, 1986, which in part again directed plaintiff's counsel to provide proposed voir dire questions and proposed jury instructions to defense counsel "at least 15 days prior to trial" and, as had the prior orders, directed plaintiff's counsel to arrange "a genuine settlement conference (not by telephone) which it shall be the duty of plaintiff's counsel to arrange." Again, the Order included the provision: "Failure to comply with any of these requirements may, in the Court's discretion, result in dismissal or default."

As the latest trial date neared, it occurred to the Court that no proposed writ had been submitted to achieve the presence of the plaintiff for trial. The undersigned's secretary was requested to contact plaintiff's counsel; her efforts to do so were unsuccessful (although no record was made of such efforts). The undersigned's Courtroom Deputy had conversations with defense counsel as to the absence of a writ; the Deputy placed calls to plaintiff's counsel on September 2, 3, and 5, 1986, each time leaving a message on his answering machine. Those calls were not returned. In an effort to save the scheduled trial date, the Court itself telephoned the Deputy United States Marshal responsible for the transportation of prisoners. It was learned that plaintiff's counsel had not contacted the Marshals Service, and that logistical problems and the shortness of time

meant that if plaintiff were to be produced at all, it could only be done if advance funds were provided immediately for air transportation.[2]

The final pretrial—with an inescapably preordained result—was held as scheduled on September 9. As before, plaintiff's counsel had not arranged a settlement conference, had not provided proposed voir dire questions and proposed jury instructions, and had not taken the necessary steps to achieve the presence of the plaintiff.[3] Once again, the latest trial date was cancelled, and once again the days set aside for the trial were lost from the Court's trial calendar.

### The Court's Decision

This case calls for no extended discussion of the law relevant to the issue presented. This Court is aware of the recent decision of a division of the United States Court of Appeals for the District of Columbia Circuit in *Shea v. Donohue Construction Co.,* 795 F.2d 1071 (D.C.Cir.1986). In it, the division suggested that—at least in the early stages of the progress of a case—trial judges somehow should intrude upon the attorney-client relationship to let the client know that the trial judge is not satisfied with the attorney's representation of the client. It is not for this Court to deal with the wisdom of that suggestion, in part because the *Shea* decision also recognizes the importance of a trial judge's discretion when a court reaches the point of scheduling trials, faced with the existence of heavy case loads. *Id.* at 1075–76.

Irrespective of *Shea,* United States District Courts assuredly are free to follow relevant Supreme Court precedent. Squarely controlling here is *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).[4] There, after

other derelictions, a plaintiff's attorney failed to appear for a pretrial conference. The trial judge dismissed the case sua sponte for failure to prosecute. The Supreme Court affirmed, making *inter alia* the following observations:

The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. [370 U.S. at 629–30, 82 S.Ct. at 1388. (footnote omitted).]

\* \* \* \* \* \*

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." [370 U.S. at 633–34, 82 S.Ct. at 1390. (citation and footnote omitted).]

\* \* \* \* \* \*

And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own

---

**2.** Particularly in light of Gramm-Rudman-Hollings, the Marshals Service has concluded that it will not subsidize litigation against the Government. That is, transportation expenses for a prisoner in litigation must be provided in advance.

**3.** Plaintiff's counsel took the position that he thought it was the responsibility of the Court to

get the plaintiff here. This is difficult to accept in light of the fact that counsel twice before had sought a writ of habeas corpus ad testificandum.

**4.** *See also Automated Datatron, Inc. v. Woodcock,* 659 F.2d 1168 (D.C.Cir.1981); *Trakas v. Quality Brands, Inc.,* 759 F.2d 185, 188 (D.C.Cir. 1985) (Scalia, J., dissenting).

 

attorney would be visiting the sins of plaintiff's lawyer upon the *defendant.* [370 U.S. at 634 n. 10, 82 S.Ct. at 1390 n. 10.]

Those concepts, fully valid today, are applicable a fortiori to the facts of this case, in which two scheduled trial dates were forced to be cancelled because of plaintiff's counsel's last-minute failure to produce the plaintiff.[5] For the foregoing reasons, and based upon Rules 16(f) and 41(b) of the Federal Rules of Civil Procedure, the motions to dismiss based upon plaintiff's failure to comply with this Court's Orders and plaintiff's failure to prosecute are granted and the case is dismissed with prejudice. An appropriate Order to such effect accompanies this Memorandum Opinion.

---

**5.** As to plaintiff's counsel's repeated failures to comply with the Court's pretrial orders, the following language of the Court of Appeals in *Automated Datatron, supra,* is relevant:

To prevent litigation delay and waste of scarce judicial resources, a trial judge must be equipped to call time on a party who had ample opportunity, prior to the eve of trial, to follow the court's clear instruction. [659 F.2d at 1169.]