Cynthia MORRISON, Plaintiff,

v.

INTERNATIONAL PROGRAMS CONSORTIUM, INC., et al., Defendants.

No. CIV.A. 97–1837 RWR.

United States District Court, District of Columbia.

Jan. 22, 2003.

**54**

Marc S. Levine, Goldstein, Handler & Levine, P.C., Jerry Robert Goldstein, Bulman, Dunie, Burke & Feld, Chartered, Bethesda, MD, for Plaintiff.

James C. Wood, E. Grey Lewis, Ernst Cornish Baynard, III, Washington, DC, for Defendants.

International Programs Consortium, Inc., Washington, DC, Pro se.

Kathleen M. Hanlon, Port Republic, MD, Pro se.

### MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

Plaintiff Cynthia Morrison filed this lawsuit alleging that the defendants employed her but failed to pay her the minimum wages and overtime required by law.[1] Plaintiff moved for default judgment because neither the defendants nor their attorneys appeared for trial on the date selected during a hearing attended by defendants' counsel, E. Grey Lewis. Because Lewis knowingly and intentionally failed to appear for the trial, and because his conduct unreasonably and vexatiously multiplied the proceedings, Lewis will be required to satisfy personally the resulting excess costs, expenses, and attorneys' fees. However, because default judgment would be too drastic a sanction against defendants for their attorney's misconduct, plaintiff's motion will be denied.

### BACKGROUND

On March 15, 2002, this Court held a status conference in open court on the record attended by Lewis and by Jerry Goldstein, counsel for the plaintiff. After questioning counsel concerning their availability, the Court set the case for trial on September 3, 2002 at 9:30 a.m.

On September 3, 2002, a jury panel of 25 persons was assembled in the jury lounge for this trial. Plaintiff and her counsel appeared on time for trial. Neither Lewis nor his co-counsel nor the defendants appeared. The courtroom deputy clerk tele-

---

1. The factual background is set forth fully in *Morrison v. International Programs Consortium, Inc.,* 253 F.3d 5, 7–8 (D.C.Cir.2001), in which the United States Court of Appeals for the District of Columbia Circuit reversed the magistrate judge's entry of judgment as a matter of law in favor of defendants.

phoned Lewis's office and home without success, but ultimately reached his co-counsel, Ernest Baynard. Baynard said he was unaware of the trial date and that he and his clients would not be ready to proceed if the court delayed the start of trial until the afternoon.[2] The 25 jurors, not being needed for jury selection for any other trial that day, were dismissed without being utilized.

The plaintiff then moved for judgment. The Court orally directed that default judgment be entered against defendants[3] and directed plaintiff to submit a draft judgment and motion for fees and costs.[4] The Court also ordered defendants' counsel to show cause why they should not be required to pay the costs of assembling the jury and the costs of plaintiff's travel to attend court that day. Lewis later left a voicemail message for the courtroom deputy clerk stating that he did not appear because he was waiting for, but never received, a written order memorializing the trial date.[5] Defendants have opposed the entry of default judgment and argued that sanctions are not warranted.

## DISCUSSION

### I. DEFAULT JUDGMENT

■ Federal courts have the inherent authority to dismiss a plaintiff's complaint or enter default judgment against a defendant in order to "prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C.Cir.2001) (holding that a district court may order sanctions, including a default judgment, pursuant to the court's inherent power to "protect [its] integrity and prevent abuses of the judicial process"). Generally, there are three justifications for the imposition of default judgment as a sanction for misconduct: "(1) prejudice to the other party, (2) prejudice to the judicial system requiring the district court to modify its own docket and operations to accommodate the delay, and (3) the need to sanction conduct that is disrespectful to the court and to deter similar conduct in the future." *Butera*, 235 F.3d at 661 (citing *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C.Cir.1998); *Shea v. Donohoe Construction Co., Inc.*, 795 F.2d 1071, 1074–77 (D.C.Cir.1986)).

In this case, the prejudice to plaintiff is primarily monetary. She incurred the expenses of transportation from her home in South Carolina to the District of Columbia

**2.** *See* 9/3/02 Tr. at 2–3.

**3.** *See* 9/3/02 Tr. at 13. Thus, defendant's motion to strike, asserting to the contrary, will be denied.

**4.** Plaintiff seeks $15,968.65 in damages and $98,098.81 in attorney's fees.

**5.** The Court will assume that Lewis notified Goldstein of this contact. The complete transcript of the message is as follows:

Yes, this is Grey Lewis and I've talked to Ernest Baynard about a case called Cynthia Morrison versus International Programs Consortium, 97–cv–01837. And we were told that today was the trial. I know we had a hearing/status conference a long time ago—months ago—where the plaintiff indicated his client was ill and he wasn't sure about the date. I was waiting for an order from the Court with regard to a date. Every other case I've ever had in my entire practice you have an order from the Court setting the date of trial. That's what we were waiting for. I never got any and Mr. Baynard never got any and that's why we didn't appear. So, in any event, my number is 202–429–2082. We certainly want to appeal everything that's going on and have our opportunity to appeal it. So, if you need to call me, please give me a call. We're ready. Standing by. Thank you.

and of her hotel, meals and transportation while in the District. The judicial system was prejudiced by having to expend considerable judicial resources to pay the jurors who appeared for this trial but were not utilized because defense counsel failed to appear. The need in this case to sanction Lewis's misconduct and to deter such misconduct in the future is significant. Lewis's misconduct falls within each of the three justifications for the imposition of default judgment as a sanction.

█ Default judgment, however, is a very severe sanction and is contrary to the "judicial system's strong presumption in favor of adjudications on the merits." *See Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1475 (D.C.Cir. 1995). Default judgment is a "drastic step, normally to be taken only after unfruitful resort to lesser sanctions."[6] *Id.* at 1478 (citations omitted). Moreover, the sins of an attorney should not be visited upon the innocent client. *Shea*, 795 F.2d at 1077–78. Where, as here, "the client[s'] only fault is [their] poor choice of counsel," default judgment is a "disproportionate sanction" and an attempt should first be made to sanction the attorney. *Id.* at 1077.

█ There is no evidence in this case that the defendants knew of or participated in Lewis's misconduct. Permitting Lewis's misconduct to deprive his clients of their opportunity to defend successfully against a potential six-figure judgment is neither necessary nor appropriate in order to vindicate the Court's interests. Lesser sanctions targeted against Lewis for his misconduct here would suffice and would preserve the defendants' opportunity for their day in court.

**6.** Disqualifying Lewis as counsel for defendants is an available option, *Shea*, 795 F.2d at 1077, but need not be considered here since

## II. LESSER SANCTIONS

█ The Court has the inherent authority to impose sanctions against an attorney for misconduct. The misconduct "must constitute 'bad faith' to justify invoking the court's inherent powers." *United States v. Wallace*, 964 F.2d 1214, 1217 (D.C.Cir.1992). Bad faith must be established by clear and convincing evidence before the court may impose such sanctions. *Shepherd*, 62 F.3d at 1478.

A federal judge is also authorized to impose monetary sanctions against an attorney pursuant to 28 U.S.C. § 1927 which provides that an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (2000). The standard for an attorney's misconduct to be sanctionable under § 1927 is unsettled in the District of Columbia Circuit. *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 905 (D.C.Cir.1998), *cert. denied*, 525 U.S. 1071, 119 S.Ct. 804, 142 L.Ed.2d 664 (1999); *Wallace*, 964 F.2d at 1217. One panel of the circuit found that sanctions under § 1927 require proof that the attorney acted in bad faith. *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 45 n. 9 (D.C.Cir.1990). Another found bad faith unnecessary and reckless indifference sufficient. *Reliance Insurance Co. v. Sweeney Corp.*, 792 F.2d 1137, 1138 (D.C.Cir. 1986).

Defendants' counsel offer two explanations for their absence. First, they claim that "[d]uring the give and take of the status hearing, Lewis did not realize that the Court had set an actual trial date."

Lewis has now moved to withdraw. Lewis's motion to withdraw will be granted.

Def. Response at 2. This claim of ignorance is indisputably refuted by the record. After discussing the attorneys' respective availabilities for trial, the Court stated clearly and unambiguously, "Let's set this down for trial, then, on Tuesday, September 3, 2002 at 9:30 a.m." *See* 3/15/02 Tr. at 20–21.[7] The Court specifically recalls that during the "give and take" regarding the trial date, Lewis was alert and attentive. He was listening and was responsive. The Court finds beyond all doubt that Lewis fully realized that the Court had set a trial date. Counsel's claim to the contrary is flatly false.

Counsel's second explanation repeatedly pressed by Lewis is that he did not appear for trial because the court did not send him a written order. *See* Response of Lewis to Show Cause at 1–3; Lewis Declaration ¶ 6; Lewis voicemail message, fn. 6 above; Defendants' Response to Motion for Default, p. 6. Said plainly, Lewis chose not to honor a court-imposed trial date he knew of unless he first received a written order reflecting it.[8] This is no claim of inadvertence. Charitably viewed, Lewis's choice displayed a deliberate indifference to the provisions of the court's local rules which provide that no further notice to counsel is required for matters that are scheduled in open court in the presence of counsel for all parties. *See* LCvR 16.1(c). The question is whether charity would be misplaced here.

Counsel's first explanation is false on its face, and the second is groundless and

---

7. The colloquy preceding the date selection further demonstrates Lewis's awareness of the trial date:

> THE COURT: I'm going based upon your best judgment, having consulted with you[ ] about when she may be able to come in for the trial. I'm not doing anything else.
> MR. GOLDSTEIN: I'm willing to try something in June or July, for example, and we'll just have to see if she's going to be physically able.
> THE COURT: I guess I'm asking you to give me your best judgment. Is that realistic?
> MR. GOLDSTEIN: It's as realistic as any I can give you going, you know, forward.
> THE COURT: All right. Mr. Lewis, I guess we're looking—at the moment, we'd be looking at an early date in the third week of June. If that's not available, then counsel has suggested sometime in September.
> MR. GOLDSTEIN: Let me just also check. Last time, at the pretrial conference, Mr. Lewis indicated, I think, Mr. [Baynard] was going to try the case. Is that still true?
> MR. LEWIS: Well, we'd try it together, I would assume.
> MR. GOLDSTEIN: Okay.
> MR. LEWIS: Your Honor, I would like to file a motion for summary judgment in this case, you know, in the interim.

> THE COURT: At the moment, I'm looking to pick a trial date. I had asked you whether the third week of June is available.
> MR. LEWIS: I've got—
> THE COURT: Excuse me.
> MR. LEWIS: I'm sorry.
> THE COURT: Or whether sometime i[n] September is available. What is your answer to my question?
> MR. LEWIS: September.
> THE COURT: Are you not available the third week of June?
> MR. LEWIS: I've got—well, I've got a case before the chief judge here, and I've got a case in Court of Federal Claims and several other cases.
> THE COURT: All right. Let's look at September then. The first week of September, are both sides available then?
> MR. LEWIS: Yes, Your Honor, Defendant is.
> MR. GOLDSTEIN: Yes, Your Honor.
> THE COURT: All right. Let's set this down for trial, then, on Tuesday September 3, 2002 at 9:30 a.m. All right. Mr. Lewis?
> MR. LEWIS: Yes, Your Honor.
> 3/15/02  Tr. at p.19 line 3—p.21 line 5.

8. Lewis's conscious choice not to appear for trial without a written order was made with knowledge of the serious prejudice, mentioned above, to the plaintiff, her counsel, and the court. *See Wallace,* 964 F.2d at 1220.

specious. Putting them aside, there is absolutely nothing else that counsel offer to explain or justify Lewis's absence from trial. Lewis does not claim, for example, that he forgot the date, or he mistakenly believed the date was a different date, or he accidentally overslept on the day of trial. Unlike the conduct of the attorney in *Wallace* whose sanctions for delaying conduct were reversed by the court of appeals, Lewis's conduct reflected a conscious, intentional decision, by Lewis's own admission, not an inadvertent omission. *Cf. Wallace,* 964 F.2d at 1221; *United States v. Ross,* 535 F.2d 346, 349 (6th Cir.1976) (sanctions not warranted where defense attorney's failure to appear for the scheduled trial date was the unintended result of a state murder trial that ran longer than expected).

Wholly aside from the excuses advanced by counsel, the record is totally void of any facts or evidence whatsoever to otherwise excuse Lewis's decision. To the contrary, Lewis had actual, first-hand knowledge of the September 3 trial date. *See* 3/15/02 Tr. at 21. Indeed, Lewis was reminded at least twice shortly before the trial of the impending trial for which he knew the date. Plaintiff's counsel sent Lewis a letter on August 13, 2002 about the trial, a letter Baynard discussed with Lewis on or after August 19. *See* 9/3/02 Tr. at 6–9. Also, the deputy courtroom clerk left a telephone message at Lewis's office four days before trial to confirm that we would still need to order a jury panel to be ready to hear the trial. *Id.* at 11–12.

The facts and circumstances leave little doubt that Lewis's decision was vexatious and in bad faith.[9] That conclusion is underscored by other troubling conduct. Counsel chose to make in a court filing the flatly false statement that he did not realize that the court had set a trial date.[10] Beyond that, counsel's decision to disregard the trial date was not the first time the defense intentionally derailed a set trial date. This case had been transferred for all purposes to a magistrate judge in 1999 by agreement of the parties, tried by a magistrate judge without any objection, and was remanded by the court of appeals to a magistrate judge without objection for retrial.[11] The magistrate judge before whom the case ultimately was set to be retried on a date certain found that defense counsel had engaged in "pure gamesmanship" by obtaining a continuance of the trial—after that magistrate judge had denied their motion for a continuance—by objecting on the eve of trial to the magistrate judge's jurisdiction.[12] *See* Memoran-

9. Whether it makes sense that Lewis would willfully choose not to appear might have been an issue if Lewis' intent were in dispute. However, that question need not be resolved since the fact is that his choice was, by his own admission, a conscious, intentional decision, not an inadvertent omission.

10. Equally troubling are efforts by defendants' counsel to shift blame for Lewis's misconduct to the court, mis-citing the local rules to support this effort. Lewis repeatedly claims that he did not appear for trial because the court did not send him a written order. In the response to the motion for default, defense counsel cite Local Rule 16.1(c) as providing that trial settings are required to be in writing. Defendants' Response to Motion for Default at 6. The cited local rule, however, provides clearly that the "Clerk shall give notice to counsel of every matter set by the court, *unless the matter is scheduled orally in open court in the presence of counsel for all parties, in which case further notice is not required.*" LCvR 16.1(c) (emphasis added).

11. Indeed, defendants' counsel once insisted that the matter be retried before the magistrate judge who presided over the trial originally. *See* Defendants' Opposition to Plaintiff's Recusal Motion at 6.

12. Although the agreement under which the parties had proceeded for over three and one-half years was reflected in their joint written

dum Opinion dated January 30, 2002, at 7. Notably, plaintiff's counsel said he so feared a repeat of defense gamesmanship to forestall the next scheduled trial that he pointedly asked Lewis at the March 15, 2002 status conference to state which of the two defense counsel would try the case. *See* 9/3/02 Tr. at 3–4.

■ The Court finds by clear and convincing evidence that Lewis knowingly and intentionally failed to appear for trial on September 3, 2002 in bad faith.[13] It is plain that Lewis's intentional decision not to appear for trial without a written order predictably multiplied these proceedings, *see Wallace*, 964 F.2d at 1219 (noting bad faith standard), in that all other participants were present for trial and, because of Lewis's vexatious decision, must appear again at a future trial date. His misconduct is sanctionable under the Court's inherent power to control its docket. To excuse from sanctions a lawyer absent from trial based upon his mere assertion that he "did not realize" that a trial date had been set when the facts plainly prove otherwise, or upon his argument that the court should have issued a written order memorializing the trial date when none was either necessary or required, would dangerously undermine the court's con-tinuing ability to insist upon compliance with its oral orders and local rules.

Based on the Court's finding that Lewis vexatiously multiplied these proceedings through his misconduct and that his behavior was in bad faith, monetary sanctions against Lewis are appropriate in this case.[14] Under the inherent authority of this court, Lewis will be required to reimburse the Clerk of Court for the cost of the excess jurors who were present as the jury panel for this case on September 3, 2002. There were 25 jurors present who were not utilized because Lewis and his clients failed to appear. Of those, 3 were government employees who were not paid, and 22 were each paid $40.00 for their attendance. All jurors, including the government employees, were paid a $4.00 transportation fee. The total cost for the 25 jurors is $980.00.[15] Under § 1927, Lewis will also be required to reimburse plaintiff for her transportation costs, to and within the District, as well as her meals and hotel accommodations during her presence for the September 3, 2002 trial setting. As a final element of the sanctions against Lewis, he will be required to pay plaintiff's attorneys' fees for the time her attorney was present in court on September 3, 2002.

meet and confer report and was confirmed orally on the record, it had not been memorialized on a consent form used under Rule 73(b) of the Federal Rules of Civil Procedure.

13. It is regrettable that such a finding is made about a member of the bar of this court.

14. The transcript of the hearing reflects that a September 3, 2002 trial date was unambiguously set. *See* 3/15/02 Tr. at 21. Additionally, the publicly available docket sheet reflects that the September 3, 2002 trial date was set at the hearing. With minimal diligence during the 5½-month period between the hearing and the trial date, Baynard could have learned of the trial date by checking the docket sheet. Nevertheless, plaintiff has not asserted or shown that Lewis did tell Baynard of the trial date, or that Baynard, like Lewis, did have actual knowledge of the trial date. Thus, the Court will not impose sanctions against Baynard for his failure to appear for trial, but will remind him that thorough preparation and proper representation of a party in a lawsuit requires at least checking the docket sheet for that case regularly for developments in the case when he has not personally attended hearings.

15. The Court's Jury Administrator furnished the relevant facts concerning the jury panel.

## CONCLUSION AND ORDER

Because the Court has found by clear and convincing evidence that Lewis engaged in conduct that was vexatious, reckless, deliberately indifferent, and in bad faith, Lewis's misconduct is sanctionable under both the Court's inherent powers and § 1927. Because there is no evidence that defendants knew of or participated in Lewis's misconduct and because lesser sanctions should be adequate to punish Lewis and to deter future misconduct, default judgment is not a proper sanction in this case. Accordingly, it is hereby

ORDERED that plaintiff's motion for default judgment [96] be, and hereby is, **DENIED** and the default judgment entered orally on September 3, 2002 be, and hereby is, VACATED. It is further

ORDERED that Lewis shall submit by February 21, 2003, a check in the amount of $980.00 payable to "Clerk, United States District Court" to reimburse the court for the excess costs for the jury panel. It is further

ORDERED that plaintiff shall file by February 21, 2003, a memorandum with evidence supporting the amount of transportation, meal and lodging expenses she incurred when she traveled to the District of Columbia for the September 2002 trial. Plaintiff shall also submit evidence supporting the excess attorneys' fees she incurred for her attorney's appearance in court on September 3, 2002. It is further

ORDERED that defendants' motion to strike plaintiff's motion for default judgment [101] be, and hereby is, **DENIED.** It is further

ORDERED that E. Grey Lewis's motion to withdraw as counsel for defendants [98] be, and hereby is, **GRANTED.** It is further

ORDERED that counsel for plaintiff and Ernest Baynard as counsel for defendants shall appear before the Court on February 13, 2003 at 9:15 a.m. for a status and scheduling conference.