Sharon **BONDS**, et al., Appellees,

v.

**DISTRICT OF COLUMBIA and Director, District of Columbia Department of Corrections, Appellants.**

No. 95–7207.

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1996.

Decided Aug. 23, 1996.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, Washington, DC, argued the cause for appellants, with whom Charles F. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the briefs. Edward E. Schwab, Assistant Corporation Counsel, entered an appearance.

Jeffrey F. Liss and Joseph M. Sellers Washington, DC, argued the cause for appellees, with whom Mary E. Gately and Warren K. Kaplan were on the brief.

Before: EDWARDS, Chief Judge, GINSBURG and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

This appeal involves a class-action suit brought by employees of the District of Columbia Department of Corrections ("Department"), alleging a pattern or practice of sexual harassment against women employees, both by creating a hostile working environment and by conditioning job benefits on the granting of sexual favors, and a pattern or practice of retaliation against employees opposing such sexual harassment. After sequential trials before a jury on liability and damages, the district court entered judgments against the District of Columbia ("District") [1] on behalf of the plaintiff class and of all the named plaintiffs but one. The district court also awarded equitable relief to the prevailing named plaintiffs and entered an order directing class-wide injunctive relief.[2]

■ The principal issue on appeal is whether the district court abused its discretion in precluding the District from offering any fact witnesses at trial as a discovery sanction under Rule of Civil Procedure 37(b)(2) and (d).[3] The District's sanctionable

---

1. The defendants-appellants are the District of Columbia and the present and former directors of the Department of Corrections, Margaret A. Moore and Walter B. Ridley, sued in their official capacities. For ease of reference, we refer to the defendants-appellants as "the District."

2. By order of January 12, 1996, this court stayed implementation of the class-wide injunctive relief.

3. In its Memorandum Opinion I, of August 9, 1995, the district court described its sanction as precluding the District "from calling non-party fact witnesses." The qualification of the order to non-party witnesses does not appear in the No-

conduct was in failing to respond in a timely manner to an interrogatory requesting the names of all persons with knowledge of relevant events regarding the class action and then providing an inadequate response. In recognition of the fact that the choice of an appropriate sanction is necessarily a highly fact-based determination based on the course of the discovery process leading up to the sanction, we remanded the record after oral argument for the district court to explain why it did not adopt a lesser measure, such as precluding the District from calling any fact witnesses whom the plaintiffs had not deposed at the time of the discovery violation.[4] On remand, the district court explained that its more severe sanction was necessary not only for the purpose of deterrence but to avoid prejudice to the plaintiff's case and to the court's calendar, as well as to prevent a benefit to the District from its discovery violation. The record does not support these findings, however; nor does it show that the District acted in flagrant or egregious bad faith. Because the preclusion order denied the District its right to a trial on the merits, we conclude that the district court abused its discretion.[5] We reach this conclusion reluctantly because sexual harassment is a long-standing problem at the Department of Corrections, see *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981), which the current director acknowledges and which the district court found persists, and because the plaintiffs, who will bear the brunt of our decision, themselves suggested a more measured sanction to the district court.

## I.

■ Consistent with the deference due to the district court in reviewing a discovery

sanction imposed under Rule 37, our obligation is "not just to scrutinize the conclusion but to examine with care and respect the process that led up to it." *Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1457 (D.C.Cir.1986), *cert. denied*, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987). Hence, we set forth the pretrial proceedings in some detail.

The plaintiffs' first amended complaint, filed January 5, 1994,[6] was in the form of a class-action suit for sexual harassment of current and former women employees at the D.C. Department of Corrections, as well as for retaliation against employees who opposed such harassment. The counts were for: (1) *quid pro quo* sexual harassment in violation of § 703 of the Civil Rights Act of 1964; (2) hostile-environment sexual harassment in violation of § 703 of the Civil Rights Act of 1964; (3) retaliation against the exercise of protected activities under § 704(a) of the Civil Rights Act of 1964; and (4) violation of plaintiffs' constitutional equal protection rights, actionable under 42 U.S.C. § 1983. Shortly before trial, the district court granted the plaintiffs' request to add a fifth count, a reprisal claim for violation of First Amendment rights, also brought under § 1983.

Soon after the complaint was filed, the district court was confronted with the problem of retaliatory conduct by Department employees against the named plaintiffs. On March 28, 1994, the court issued a temporary restraining order, followed on April 26 by a preliminary injunction, to prevent a retaliatory demotion of plaintiff Bessye Neal. On June 7, the court issued a second preliminary injunction barring proposed retaliatory disci-

---

vember 7, 1994 order, the court's statements at the November 17, 1994 discovery hearing, the court's November 18, 1994 order, the court's statements at the January 25, 1995, status conference, or the court's order on the motion for reconsideration of January 25, 1995, all of which refer to "all witnesses."

**4.** Although in the absence of findings as to the potential effectiveness of a lesser sanction we could have reviewed the record independently, see *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991), we

concluded that in light of the deferential standard of review a statement of reasons from the district court was advisable. See *Weisberg v. Webster*, 749 F.2d 864, 874 (D.C.Cir.1984); *Von Der Heydt v. Rogers*, 251 F.2d 17 (D.C.Cir.1958) (per curiam).

**5.** In light of our disposition, we do not reach the District's challenges to the dismissals of two jurors and the scope of the class-wide injunctive relief.

**6.** The plaintiffs filed their initial complaint on November 24, 1993.

plinary action against plaintiff Tyrone Posey and against Dennis Brummell, plaintiff Vera Brummell's husband and also a Department employee, and barring all future retaliation against any named plaintiff. After the issuance of the June 7 order, Department employees engaged in three further acts of retaliatory conduct: a retaliatory demotion of plaintiff Essie Jones; the failure to investigate a complaint of retaliatory harassment against plaintiff Shivawn Newsome; and a renewed retaliatory disciplinary action against plaintiff Tyrone Posey. After three days of hearings, the district court on December 16 held the District of Columbia and the Department director in civil contempt of court. Specifically, the court found that the director had failed to advise Department employees of the court's anti-retaliation injunction. On December 21, 1994, after finding that the director was unable to ensure compliance with the June 7 preliminary injunction, the court appointed a special master to oversee any personnel actions relating to the named plaintiffs and Dennis Brummell. Finally, on April 5, 1995, having found that two Department employees had engaged in retaliatory conduct against one of the plaintiffs' witnesses at trial, the court held both employees in criminal contempt of court and sentenced them to ten days' imprisonment each.

The plaintiffs began discovery on January 25, 1994, by requesting the production of a vast array of documents. The District timely sought a number of continuances, which the district court granted, in order to comply with the discovery request and other aspects of the litigation. As early as April 8, 1994, plaintiffs' counsel informed the court of difficulties with the production of documents, and filed a motion to compel. By June 30, plaintiffs' counsel informed the court of difficulties in scheduling depositions on the issue of class certification because the Assistant Corporation Counsel assigned to the case was occupied with other matters. The court, which had previously expressed concern, on March 28 and April 26, that the case was not being adequately staffed by the District, admonished the Assistant Corporation Counsel about the understaffing of the case.[7] Problems with the document production continued, and on September 15 the court ordered the District to complete the production.

The plaintiffs scheduled a large number of depositions from September through early December 1994. According to the plaintiffs, they took 66 total depositions, of which 49 were conducted by November 10, 1994 (32 relating to the merits and 17 relating to the incidents of retaliation); depositions were held on most days in October and early November. During this time, the District also moved to extend the time to respond to the plaintiffs' motion for class certification from September 6, 1994, to October 3, 1994, and, over the plaintiffs' opposition, the court granted the continuance.[8]

On September 29, 1994, the plaintiffs submitted their First Set of Interrogatories. Interrogatory No. 2 asked the District to "[i]dentify all persons who have knowledge of or evidence that concerns the matters set forth in paragraphs 23 through 251 of the First Amended Complai,t and, for each such person, describe the matters concerning which such person has knowledge or evidence." The term "identify" was defined to "mean[ ] to give, to the extent known, the person's full name, present or last known address, and the present or last known place of employment." At a status conference on October 6, 1994, after the plaintiffs gave notice of a deposition to ask for the identity of

---

7.　The district court stated:

　Well, that's why the government is going to end up losing this case, isn't it? If the government doesn't listen to one thing I tell them in this case, they're headed down a rocky road, I'll tell you, and I don't know how I can make it any plainer. I know I've made it plain to you. I don't know if you[r] superiors aren't listening to anything you're saying or what's happening over there. The dates [plaintiffs' counsel] notes for the deposition, you either show or don't show, but no protective order is going to be granted.

　You just note your dates, Mr. Kaplan [plaintiffs' counsel]. If they [the District's counsel] don't show, you proceed without them. If the witnesses don't show, I'll hold them in contempt. That's the only way I can deal with the District of Columbia Government these days.

8.　The court certified the plaintiff class on December 23, 1994.

persons with knowledge of the allegations in the complaint, the District stated that it would respond to interrogatory No. 2 by October 24. On October 24, however, the District moved for a two-week enlargement of time to respond, to November 7, 1994. The District singled out interrogatories No. 2 and No. 13 as "particularly time consuming." [9] The plaintiffs opposed the motion for enlargement of time, and in the alternative "request[ed] that the Court further order that the defendants be barred from calling at trial any witnesses whom they fail to identify in response to Interrogatory Number 2 on or before November 7, 1994, and who could have reasonably have been identified by that date." On November 2, 1994, the court granted the District's motion for a continuance and ordered that:

> defendants shall have up to and including November 7, 1994 to file their answers to plaintiffs' set of interrogatories; provided, however, any witness not identified in response to Inter[rogatory] 2 who could reasonably be identified by Nov. 7, 1994, may not be called at trial.

The District failed to reply to the plaintiffs' interrogatories by the November 7, 1994, deadline. Three days later, on November 10, the District submitted its answers, which included the following response to interrogatory No. 2:

> The identities of all persons known to defendants having knowledge of or evidence that concerns the matters set forth in paragraphs 23 through 251 are contained in the complaint itself, documents produced in discovery, and the deposition testimony of the numerous witnesses given in deposition or scheduled for deposition. Defendants will supplement this response if individuals, not identified in discovery documents or depositions become known to them.

The plaintiffs, in a status report filed November 15, 1994, objected that the District's response was "wholly inadequate" because it failed to identify any witness.

> Accordingly, the plaintiffs request that, absent good cause shown, the defendants be limited at trial to call only witnesses whom the plaintiffs have deposed and to be limited in their examination to topics the plaintiffs have covered in deposition.

The District, in a status report filed on November 16, and at a discovery hearing on November 17, maintained that its response to interrogatory No. 2 complied with Rule 33(d) (then classified as Rule 33(c)), which allows a party served with an interrogatory to produce business records for the requesting party to examine. However, the district court found, by order of November 21, 1994, that the District had failed to comply with the interrogatory and ruled that the "failure to identify any witnesses, by name, in response to plaintiffs' Interrogatory 2, indicates that no witnesses may be called at trial unless defendants successfully move for reconsideration of the November 2, 1994 order." [10]

On December 12, 1994, the District moved for reconsideration. Accompanying the motion was a "supplemental response to Interrogatory No. 2," which consisted of 27 pages

---

9. Interrogatory No. 13 requested the District to identify each person who received a job benefit in preference to one of the named plaintiffs.

10. At the status conference on November 17, 1994, the district court announced:

> Well, under the order I entered, then the defendant[s] cannot call any witnesses with that response; isn't that right?

> . . . . .

> And if they want to change my order, they're going to have to move to reconsider.

> . . . . .

> So this trial will be without any witnesses for the defendant[s] unless I modify or reconsider that order.

> . . . . .

> You don't need to compel anything there.

> . . . . .

> You've already won your whole case right there.

In its Statement of Reasons on Remand, the district court explained that its reference to "your whole case," viewed in context, was intended to refer only to plaintiffs' motion to compel, not the case on the merits.

containing over 1,000 names with brief identifications. The supplemental response was prepared by having two paralegals, who each spent two full weeks, go through all the documents and deposition testimony and pull out the names of every person mentioned. The District asserted in its motion, filed by an Assistant Corporation Counsel, who had been assigned to replace the second Assistant who had resigned in November, that the good-faith production of over 1,000 names showed that the District had not violated the court's order willfully. At a discovery hearing on December 21, 1994, counsel also contended that the Assistant originally assigned to the case had not received the order of November 2, perhaps because a secretary accidentally stapled two documents together. Counsel further explained that the first Assistant had not been at the November 17, 1994, discovery hearing because of illness and that the second Assistant (who had since resigned) had had little knowledge of the discovery issues.

The district court denied the motion for reconsideration of the discovery sanction on January 25, 1995. The court explained:

I repeatedly stressed to the defendants the importance of the defendants' proper staffing of this case because of the need for a prompt trial date. I want to cut off the repeated need for preliminary injunction hearings, and I want to stop the defendants' ongoing misconduct which I have repeatedly found through preliminary injunction hearings in this case, and it is not my intention to allow the defendants to escape the consequences of their dilatory actions in discovery by getting out from under my November 2nd very clear order that they identify those people by November 7th or suffer the pain of not being able to call fact witnesses at trial.

Their action five weeks later in giving a thousand names was a perfect demonstration of how not to comply with my order, and I have no reason and will not reconsider my original order, and the defendants will not be able to call any fact witnesses at trial.

Following a pretrial conference on February 22, 1995, the court denied the District's request for a trial continuance of four to six weeks, and the trial began on March 1, 1995, as scheduled. The District submitted, for the record, proffers on more than fifty witnesses that it would have called at trial, were it not for the preclusion order. On August 9, 1995, the district court entered final judgment on the verdicts for the plaintiff class and all but one of the named plaintiffs, awarded equitable relief (backpay and reinstatement) to all the prevailing named plaintiffs, and issued an order for class-wide injunctive relief. The District appeals these three orders.[11]

**II.**

■ Under Rule 37, the district court has broad discretion to impose sanctions for discovery violations. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (per curiam). The District concedes that its failure to make an adequate response to interrogatory No. 2 was a violation of a discovery order and subject to sanctions under Rule 37. It protests only the extreme nature of the sanction imposed, which it contends was tantamount to a default judgment.

**A.**

■ Rule 37 authorizes the district court, in response to a "failure . . . to serve answers or objections to interrogatories," to "make such orders in regard to the failure as are just," including "prohibiting that party from introducing designated matters into evidence." FED.R.CIV.P. 37(b)(2)(B), (d). In reviewing the discovery sanction imposed by the district court, we " 'may reverse the trial court only if . . . its actions were clearly unreasonable, arbitrary or fanciful.' " *Hull v. Eaton*, 825 F.2d 448, 452 (D.C.Cir.1987) (per curiam) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399

---

11. Proceedings for the absent class members continued in the district court.

(D.C.Cir.1984)). Although we bear in mind that the district court was closer to the course of the litigation, *Founding Church of Scientology,* 802 F.2d at 1457, we exercise appellate review to ensure that the district court did not abuse its discretion in imposing too severe a discovery sanction. *See Jackson v. Washington Monthly Co.,* 569 F.2d 119, 123 (D.C.Cir.1977) (dismissal under Rule 41(b)). We accept the district court's factual findings unless they are clearly erroneous. FED.R.CIV.P. 52(a).

■ The central requirement of Rule 37 is that "any sanction must be 'just,'" *Insurance Corp. v. Compagnie des Bauxites de Guinée,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982), which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation. *See* 8A WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2284, at 623 (2d ed.1994) ("[J]ustice requires that the most drastic sanctions be reserved for flagrant cases."). The choice of sanction should be guided by the "concept of proportionality" between offense and sanction. *See Shea v. Donohoe Constr. Co.,* 795 F.2d 1071, 1077 (D.C.Cir.1986); *Butler v. Pearson,* 636 F.2d 526, 531 (D.C.Cir.1980); *cf. Lorenzen v. Employees Retirement Plan,* 896 F.2d 228, 232 (7th Cir.1990). Particularly in the context of litigation-ending sanctions, we have insisted that "'[s]ince our system favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success' or would obviously prove futile."[12] *Shea,* 795 F.2d at 1075 (quoting *Trakas v. Quality Brands, Inc.,* 759 F.2d 185, 186–87 (D.C.Cir.1985)); *see also Automated Datatron, Inc. v. Woodcock,* 659 F.2d 1168, 1170 (D.C.Cir.1981).

■ In determining whether a severe sanction is justified, the district court may consider the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future. *See Shea,* 795 F.2d at 1074. Thus, we have stated that "[c]onsiderations relevant to ascertaining when dismissal, rather than a milder disciplinary measure, is warranted include the effect of a plaintiff's contumacious conduct on the court's docket, whether the plaintiff's behavior has prejudiced the defendant, and whether deterrence is necessary to protect the integrity of the judicial system." *Bristol Petroleum Corp. v. Harris,* 901 F.2d 165, 167 (D.C.Cir.1990). The district court's interest in deterrence is a legitimate one, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2780; *see also Weisberg,* 749 F.2d at 871. Yet, unlike sanctions "that are geared to remedying some prejudice," sanctions based only on principles of deterrence "call for careful evaluation to ensure that the proper individuals are being sanctioned (or deterred) and that the sanctions or deterrent measures are not overly harsh." *Shea,* 795 F.2d at 1077. Because "a sound discretion hardly comprehends a pointless exaction of retribution," *Jackson v. Washington Monthly,* 569 F.2d at 123, a discovery sanction imposed for its deterrent effect must be calibrated to the gravity of the misconduct. *Cf. Shepherd,* 62 F.3d at 1478–79.

■ The broad preclusion order under review approaches a default judgment in its severity. Although the plaintiffs retained the burden of persuasion at trial, *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993), resolution of the plaintiffs' sexual harassment and retaliation claims was likely to depend on the credibility of conflicting witnesses and the jury's evaluation of Department employees' motives. In a case so likely to turn on the testimony of fact witnesses, the district court's order precluding the District from calling any fact witnesses left the District with little ability to contest

---

12. The plaintiffs rely on *Founding Church of Scientology,* 802 F.2d at 1459 n. 15, in which the court emphasized the importance of a prior warning of the sanction to be imposed. *Founding Church of Scientology* is distinguishable because the court concluded that no lesser sanction "held out any realistic promise" of inducing compliance with the court order. *Id.* at 1459.

the plaintiff's claims. It is true that the District could still introduce documentary evidence and expert testimony, counter-designate portions of deposition testimony introduced at trial, cross-examine the plaintiffs' witnesses, and make opening and closing arguments. Moreover, the jury found against one named plaintiff on both her claims, and two named plaintiffs prevailed on their Title VII claim but not on their § 1983 claim. Hence, the preclusion order did not operate with such assured effect as a default judgment. Nonetheless, the other evidentiary means open to the District lacked the force of live testimony by Department employees whom the named plaintiffs and other witnesses had accused of sexual harassment and retaliatory conduct. *See Christie v. Foremost Ins. Co.*, 785 F.2d 584, 586 (7th Cir. 1986) ("Employment discrimination cases in particular often involve 'sensitive and difficult' issues of fact.... The credibility of witnesses is often crucial."); *Weahkee v. Perry*, 587 F.2d 1256, 1266 (D.C.Cir.1978). Accordingly, a discovery sanction that results in a one-sided trial, as the preclusion order under review did, is a severe one.

■ Before imposing a discovery sanction as severe as that under review, the district court should consider a less drastic sanction in light of the three factors set forth in *Bristol Petroleum*.[13] *See Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir.1988) ("Before the extreme sanction of preclusion may be used by the district court, a judge ... must consider less drastic responses."). When a discovery sanction denies the defendant the right to a trial on the merits, the district court must either make a finding supported by the record that the more severe sanction is necessary to avoid prejudice to the plaintiffs or to the court's calendar or to prevent a benefit to the defendant, or—if the sanction is based only on deterring future discovery misconduct—the more severe sanction must be supported by a finding of fla-

grant or egregious misconduct by the defendant. In somewhat similar circumstances, this circuit has previously set aside an excessive discovery sanction when lesser measures were not considered. *Grochal v. Aeration Processes, Inc.*, 797 F.2d 1093, 1098–99 (D.C.Cir.1986) (holding that the plaintiff's responses to several interrogatories concerning damages were not "so inadequate as to warrant exclusion of [plaintiff's] evidence of damages and, as a necessary consequence of such exclusion, dismissal of [plaintiff's] complaint").[14] The requirement to consider a lesser sanction was manifest in the instant case, given that the plaintiffs themselves in their status report of November 15, 1994, requested a lesser sanction, whereby the District would have been precluded from calling any witnesses at trial whom the plaintiffs had not already deposed or scheduled for deposition as of November 7, 1994.[15] Thus, the district court was obliged to consider whether the more severe sanction was necessary to further interests other than deterrence, or if not, whether a less severe sanction would have been more proportionate to the nature of the District's discovery violation and its effects on the litigation.

### B.

■ In its Memorandum Opinion I, of August 9, 1995, the district court found the District's contention that it had not received the November 2, 1994, order containing the threatened sanction factually unsupported and found that the District had no excuse for its failure to comply by the November 7, 1994, deadline. The court ruled that the District's non-specific response to interrogatory No. 2 on November 10, 1994, was inadequate and that the supplemental response of December 12, 1994, remained inadequate and thus was "further evidence of bad faith." The court also ruled that the preclusion order "was not tantamount to the entry of a default judgment" because the "[p]laintiffs

---

13. Indeed, the district court did expressly consider the *Bristol Petroleum* factors in its Memorandum Opinion I of August 9, 1995, at 19–20.

14. The *Grochal* opinion was later vacated as moot, 812 F.2d 745 (D.C.Cir.1987), so it lacks precedential effect.

15. The district court would also have been authorized to award the plaintiffs "reasonable expenses, including attorneys' fees, caused by" the District's discovery violation. FED.R.CIV.P. 37(b)(2).

were still required to prove liability by a preponderance of the evidence, their witnesses were subject to cross-examination, and defendants were permitted to call expert witnesses." Even if the factors relevant for a default judgment were considered, the district court found that the delay would have "jeopardiz[ed] the schedule of a seven-week-long trial" and "would have substantially prejudiced plaintiffs."

In its Statement of Reasons on Remand, the district court addressed the possibility of a lesser sanction, while emphasizing that its preclusion order should be viewed in the context of the District's repeated delays in discovery and the contumacious conduct of Department employees. The district court succinctly explained that "the purpose of the sanction in this case went beyond deterrence to include avoiding prejudice to plaintiffs, preventing defendants from benefitting from their misconduct, and avoiding burdensome changes to this Court's schedule." We examine the court's stated reasons with respect to these three concerns.

**(1) Prejudice to the court.** By November 1994, when the district court imposed the preclusion sanction, most of the discovery had been completed, with final depositions to be taken by December 16, 1994. The trial was scheduled to begin on March 1, 1995. There is nothing in the initial or supplemental findings to indicate that the lesser sanction proposed by the plaintiffs would have interfered with maintaining the firm trial date or otherwise interfered with the district court's docket.[16] The trial date of March 1, 1995, was not set until mid-October 1994, and with plaintiffs' lesser sanction there would have been no need to change it.

**(2) Prejudice to the plaintiffs.** The district court's Statement of Reasons on Remand states that the lesser sanction would have prejudiced plaintiffs in the following manner: "While barring defendants from calling witnesses not deposed would have addressed the prejudice to plaintiffs' ability to effectively cross-examine those witnesses, it would *not* have redressed in any way the prejudice caused plaintiffs by their own inability to call witnesses who may have been *helpful* to their case, but whose identities were not revealed by defendants." This finding of prejudice to the plaintiffs was not previously asserted by the plaintiffs, who stated at the November 17, 1994, status conference that interrogatory No. 2 sought "to have the District ... identify those persons on whom [it] relied in denying the allegations of the complaint," so that the plaintiffs could "assess whether our discovery program can draw to a close with some confidence that we've covered the bulk of the people whom the District might call as witnesses." In their brief to this court, the plaintiffs similarly state that their purpose in propounding interrogatory No. 2 was to be able to prepare cross-examination of the witnesses whom the District most likely would call at trial. Appellees' Brief at 5, 17. The plaintiffs' proposed lesser sanction would have protected them from prejudice to their interest in preparing cross-examination of the District's witnesses just as well. Moreover, the new theory of prejudice to the plaintiffs is not supported by the record. The plaintiffs have not identified any potential witnesses of whom they were unaware as of November 7, 1994.[17] For these reasons, the district court has not shown that the lesser sanction would have failed to protect against prejudice to the plaintiffs.[18]

16. The district court's finding that its calendar would have been jeopardized because the plaintiffs "would have been required to take numerous depositions" of persons listed in the District's supplemental response of December 12, 1994, is premised on the false understanding that the plaintiffs sought to identify potential plaintiffs' witnesses with interrogatory No. 2. *See infra.*

17. When the plaintiffs attempted to point out a specific instance of prejudice in their proposed findings submitted to the district court following the remand of the record, the District's reply noted that the plaintiffs had in fact received the information about the particular witness months earlier. The district court's Statement of Reasons on Remand dropped any reference to the plaintiffs' asserted example of prejudice, and noted no other example.

18. Although prejudice to the opposite party may be presumed when the discovery offense causes unreasonable delay, *Shea*, 795 F.2d at 1075, we have already concluded that the District's discovery violation did not delay the trial date. *See supra.*

**(3) Benefit to the defendants.** The district court stated that a lesser sanction would have allowed the District to benefit from its discovery violation "by permitting [the District] to conceal the identities of witnesses whose knowledge or testimony could have been helpful to the plaintiffs." [19] As noted, this was never the plaintiffs' claim, and even at this late date there is nothing to indicate that any witness was concealed from the plaintiffs. The record does not show how the District could have benefitted from its discovery violation if it had been precluded from calling any witnesses at trial whom the plaintiffs had not already deposed or scheduled for deposition.

### C.

**Deterrence.** Having concluded that the district court's findings of prejudice to the court and to the plaintiffs, as well as benefit to the District, are unsupported by the record, we are left with only the rationale of deterrence. The district court emphasized on remand that "[i]mposition of a lesser sanction on defendants than the sanction adopted by the court on November 17, 1994, would have failed to protect the integrity of this Court's authority." Referring to its November 2, 1994, order, the court explained that "[w]hen, as in this case, a party has been apprised that further non-compliance with discovery rules will be met with a specific sanction, it is incumbent upon the court to carry out that sanction."

Because a Rule 37 sanction resting on principles of deterrence alone must be proportional to the gravity of the misconduct, *see supra* Part II.A, we conclude upon reviewing the district court's findings concerning the discovery violation that the District's discovery violation was *not* flagrant or egregious. The district court found that the District's invocation of Rule 33(d) to authorize its vague response to interrogatory No. 2 on November 10, 1994, was evidence of "bad faith." Although an advisory committee note offers support for the ruling that the District's reliance on Rule 33(d) was misplaced, *see* FED.R.CIV.P. 33(c) advisory committee's note (1980 amendment) (stating that a reference to business records without specifying particular documents is "an abuse of the option"), the District's legal argument was not frivolous, given the absence of case law in this circuit, and hence does not necessarily show bad faith. The district court also found that the District's "shifting explanations" for the failure to respond in a timely manner were evidence of bad faith. Yet the District explained to the district court that the discrepancies in its position arose from the absence of the Assistant Corporation Counsel assigned to the discovery issues at the November 17, 1994, discovery hearing due to illness. Therefore, we are unconvinced that the District's contention at the December 21, 1994, discovery hearing that counsel had not received the November 2, 1994, order—which the district court found was factually unsupported—was made in bad faith. The district court found further that the supplemental response of December 12, 1994, which contained over one thousand names, was "not compiled in good faith." Again, the supplemental response may have been over-broad, but it does not follow that the District was not attempting in good faith to comply with an interrogatory requesting it to identify "all persons" with knowledge of the allegations in the multi-count class-action complaint.

The district court emphasized the context of "defendants['] conduct throughout 1994" as a backdrop to the imposition of the preclusion order. Certainly, the district court did not hesitate to exercise its contempt powers to halt the disobedience of court orders by Department employees. The Rule 37 sanction, however, is designed to be used against discovery misconduct; the findings of contempt are themselves the appropriate sanction for the retaliatory conduct by Department employees. Finally, the district court was concerned about the "defendants' prior pattern of delay, repeated requests for extensions, and tardy production of documents." The District's dilatory conduct of prior

---

**19.** The district court further stated that if the District was correct that the plaintiffs already knew who the District's witnesses would be, then the proposed lesser sanction "would have been no sanction whatsoever." This statement reveals the essentially punitive nature, unrelated to any effects from the discovery violation, of the decision to impose the more severe sanction.

stages of the discovery process is indeed directly relevant to the choice of an appropriate sanction. Yet there is nothing in itself sanctionable about the District's requests for extensions of time, which the district court granted, to produce documents and to file papers opposing class certification, and there are no findings in the record as to the cause of the problems with document production. Accordingly, we conclude that the record does not demonstrate that the District's discovery violation was flagrant or egregious.

The District's discovery violation must also be evaluated in the context of the demands that the plaintiffs' discovery requests placed on defense counsel within a strict pre-trial schedule set by the district court. This is hardly a case that had dragged on for years, or a case in which there is evidence that delays were sought for tactical advantage. Rather, there was a lot going on, often simultaneously, in a relatively short period of time, whether it be discovery in the form of document production [20] or depositions, or contempt proceedings, mediation efforts, class certification, or trial preparation. The plaintiffs' interrogatories were served on September 21, 1994, and due on October 24; the discovery period was scheduled to close on December 16, 1994, and trial was set for March 1, 1995. During the period between September 21 and October 24, 1994, counsel for the District defended a Department employee in a contempt proceeding on September 30, and defended the Department director in a contempt proceeding on October 20; filed the District's opposition to the plaintiffs' motion for class certification on October 3; represented the District in court-ordered mediation beginning October 13; and defended Department employees in the 32 depositions that the plaintiffs scheduled for between October 12 and October 28.[21] Hardly a case where a party ignored an ongoing litigation, rather, the record reveals efforts to meet numerous deadlines within a tight time period in a complex class-action suit. Although some of the competing demands on defense counsel's time were occasioned by Department employees' contumacious conduct, as the district court found, the district court addressed that conduct independently. The district court acknowledged, moreover, that it was aware of the intense litigation demands generally imposed on the Office of the Corporation Counsel, in noting in its Memorandum Opinion I, at 14 n.3 (Aug. 9, 1995), the underfunding and understaffing in that Office as set forth in the Declaration of Michael E. Zielinski of June 19, 1995. This acknowledgment by the district court, combined with the intensity of the litigation activity related to this lawsuit alone, further support the conclusion that the District's discovery violation was not flagrant or egregious.

We recognize that the plaintiffs and the district court were beset by the District's discovery delays, and that while discovery was ongoing Department employees engaged in retaliatory conduct. These are serious matters, and we do not take them lightly. Indeed, the district court's frustration and exasperation is evident both in its demands that the District assign additional counsel to this case, notwithstanding the court's appreciation of other demands on the Corporation Counsel, and in its declaration on remand that in the retaliatory conduct by Department employees and the discovery delays by the Corporation Counsel, "this court has witnessed the most shocking example of irresponsible conduct during [the judge's] tenure on the bench." Yet "nothing in the district court's opinions or the record ... persuade[s] us that alternative sanctions, such as [the proposed lesser sanction], would have been ineffective." *Shepherd,* 62 F.3d at 1469. The discovery violation does not reflect either an attack on the integrity of the court or an attempt by the District to gain an unfair tactical advantage over its litigation opponent. There is no evidence that the District withheld anything in discovery. Contrary to the district court's findings, the record pro-

---

**20.** According to the plaintiffs' brief, the District had produced over thirteen feet of documents by the time that the discovery violation occurred. Appellee's Brief at 6.

**21.** The District's motions to stay the proceedings while the parties engaged in mediation and for a protective order against the taking of further depositions by the plaintiffs without leave of court were denied by the district court.

vides no evidence of prejudice to the plaintiffs or the court's calendar, nor of benefit to the District. It is true that the discovery violation occurred at a time when discovery was well underway, with document production largely completed, most of the plaintiffs' depositions already scheduled, and a firm trial date set, and these circumstances constrained the nature of a "just" sanction under Rule 37. Nevertheless, to be punitive without regard to the substantial discovery that had occurred and was continuing, particularly given the district court's acknowledgment of other litigation burdens, would run afoul of the proportionality requirement and be overly harsh, and thus, unreasonable. In view of the nature of the District's discovery violation, principles of deterrence alone cannot support the broad preclusion order imposed. Accordingly, we are constrained to conclude, reluctantly, that the district court abused its discretion in not imposing a less harsh sanction, and we reverse and remand the case to the district court.[22]

**22.** Our disposition of this appeal does not disturb the district court's injunction barring retaliation at the Department, which the District does not challenge on appeal. This order was originally issued as a preliminary injunction barring retaliation against the named plaintiffs on June 7, 1994, which was extended to all the plaintiffs' witnesses on March 15, 1995, and issued as part of paragraph 1 of the permanent injunction affecting all Department employees on August 9, 1995.